LUISA PÉREZ GONZÁLEZ, demandante y apelante, *v.* LA COMISIÓN DE INDEMNIZACIONES A OBREROS, demandada y apelada.

No. 3702.—*Visto:* Enero 13, 1926. *Resuelto:* Julio 15, 1926.

PATRONO Y EMPLEADO—LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO— PROCEDIMIENTOS—PROCEDIMIENTOS DE LA COMISIÓN DE INDEMNIZACIONES A OBREROS—APELACIÓN CONTRA SENTENCIAS DICTADAS POR LOS TRIBUNALES AL REVISAR DICHOS PROCEDIMIENTOS—REVISIÓN—CUESTIONES DE HECHO Y CONCLUSIONES.—Examinada la prueba en este caso *se resolvió* la corte inferior cometió error al apreciarla.

SENTENCIA de *Tomás Bryan*, J. (Aguadilla), declarando sin lugar la demanda, sin costas. *Revocada y devuelto el caso para ulteriores procedimientos.*

*Alberto García Ducós*, abogado de la apelante; *Hon. Attorney General George C. Butte, C. Llauger Díaz* y *Emilio Aldrey*, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La demandante presentó una demanda solicitando la revisión de un fallo adverso de la Comisión de Indemnizacio-

nes a Obreros y apela de una sentencia declarando sin lugar la demanda.

La relación del caso y opinión dictada por el juez de distrito es como sigue:

"Primero: Que Justo Velázquez González en 6 de abril de 1922 era un capataz de carretera, empleado por el Gobierno Insular, ganando un salario de $0.75 diarios.

"Segundo: Que mientras estaba ocupado en sus faenas como tal capataz en dicha fecha 6 de abril de 1922, sufrió una herida pequeña en un pie, que no le impidió continuar su trabajo.

"Tercero: Que posteriormente, o sea el 25 de abril de 1922, falleció Justo Velázquez González, a consecuencia de *séplicopioemia* de origen traumático, iniciada tal infección en una herida que se produjo el expresado Velázquez con un clavo del zapato, en la región plantar del pie izquierdo, cerca del talón, desarrollándose la correspondiente infección o linfagitis.

"Cuarto: Que la causa de tal infección, y por tanto, de la muerte de Justo Velázquez González, no fué debida a un accidente del trabajo que ocurriera a este capataz mientras trabajara para el Departamento del Interior y dentro de las funciones o como consecuencia de las mismas inherentes a su cargo."

En el sexto y último señalamiento se alega que la corte cometió error al apreciar la prueba, y después de un estudio minucioso del récord estamos enteramente de acuerdo con esta alegación de la apelante.

La declaración no contradicha de varios testigos demuestra concluyentemente que mientras Velázquez trabajaba con un pico, la punta de éste tropezó con una piedra y le perforó el zapato del pie izquierdo cerca del talón, por el sitio que se junta la suela del zapato con la piel del mismo, penetrando en el pie. No hay conflicto alguno sobre este punto en la prueba aducida durante el juicio. La resolución de la corte sobre este aspecto del caso es indudablemente correcta.

A fin de que el récord hable por sí mismo y no por conducto de un comentarista, transcribimos totalmente la declaración de un empleado de la demandada que ocupó la silla de los testigos en doble carácter, como testigo de ambas par-

tes, junto con toda la prueba presentada por la Comisión después de la demandante haber terminado de presentar la suya:

"*Declaración jurada del testigo y perito doctor Cancio:* Fué ofrecido este testigo por la demandante como perito también; la demandada aceptó la capacidad del declarante e hizo suya la declaración del mismo, en cuya virtud éste bajo juramento e interrogado por la demandante declaró: que se llama Miguel Rodríguez Cancio Vendrell; es médico-cirujano; ejerce en San Sebastián, P. R.; conoció a Justo Velázquez y González, a quien vió allá por el 10 de abril de 1922. Que dicho Velázquez González murió, lo que le consta al testigo porque él fué quien certificó la muerte. Que cuando dicho Velázquez González falleció, éste vivía en la carretera de Moca a San Sebastián, ahí por el kilómetro 11, y era de color blanco. Que dicho individuo falleció de séptico piohemia de origen traumático.

"*Prueba documental:* En este acto la parte áctora presentó como prueba, siendo admitida sin oposición y marcada exhibit 'B' de la demandante la certificación expedida en Moca, en 29 de abril de 1922 por el Encargado del Registro Civil de dicho pueblo y creditiva del fallecimiento de Justo Velázquez y González. *Continuación de la declaración del Dr. Cancio:* Continuó declarando dicho testigo bajo el mismo juramento prestado y, a preguntas de la parte actora contestó: que la muerte de referencia le provino a dicho Velázquez González de algún puntazo que se hizo asunto de un proceso infeccioso que dió lugar al flemón difuso del pie; la infección, por descomposición del pus, se generalizó, dando lugar a una séptico-piohemia que indiscutiblemente fué la causa inmediata de la muerte de dicho lesionado. Que antes de morir el referido Velázquez González, el perito lo examinó y le encontró un flemón difuso en el pie izquierdo, de origen traumático, presentando una herida punzante en la planta de dicho pie izquierdo, hacia el lado de adentro del mismo, o sea por la mitad del pie, por el sitio donde está la costura de la piel del zapato con la suela; y presentaba además otra ligera herida más hacia el talón del mismo pie. Interrogado por el señor Fiscal, el perito contestó: que recuerda que dicho lesionado, cuando el testigo lo examinó tenía, además de dicha herida punzante, una ligera incisión superficial en la región plantar, pero más hacia el talón; pero ésta le había sido dada por un practicante de Moca con objeto de sacar el pus; que era una herida muy superficial, la que apenas había traspasado parte de la piel; pero que la herida

que se infectó fué la punzante, la de la planta que era la que estaba cerca de la costura de la suela y la piel del zapato. Que la otra se veía claramente que había sido dada con un bisturí. Que la herida que presentaba gravedad no era la dada con el bisturí porque ésta se efectuó para darle salida al pus; que el paciente tenía infectado todo el miembro, todo el pie, con una grave séptico-piohemia; que recuerda bien que la herida que tenía la infección no era la del talón, sino la otra (señalando el testigo el pie izquierdo, entre la planta y el talón, por el sitio donde se junta la suela con la piel del zapato). Que conoce al señor Calventy pero no recuerda a Juan Bautista Soto Latorre, investigador de la Comisión de Indemnizaciones a Obreros, pero puede ser que también lo conozca. Que recuerda haber informado a la Comisión de que hacia el 11 de abril de 1922 fué a visitar a Justo Velázquez González; que allí se enteró que ya el Dr. Jiménez Serra, de Aguadilla, y un practicante de Moca le había verificado una incisión en la región plantar del pie izquierdo; que de su examen dedujo que el paciente había recibido una lesión punzante, bastante seria, que se había hecho asunto de un proceso infeccioso que dió lugar al flemón difuso del pie; que la infección, por descomposición del pus, se generalizó, dando lugar a una séptico-priohemia de la cual murió el paciente cuatro o cinco días después. Que el declarante es médico de la Comisión de Indemnizaciones a Obreros, en San Sebastián, desde hace algunos años, siendo sus deberes, como tal, asistir a los lesionados. Que hace 5 ó 6 años viene ejerciendo como médico de dicha Comisión demandada; siendo sus deberes curar a los lesionados cuando reciben algún accidente; que dicho lesionado, cuando el testigo fué a verle, ya tenía dos heridas, pero una era punzante y la otra una incisión hecha con un bisturí en el talón del pie izquierdo; que la herida punzante era la que se había infectado y esa estaba más hacia fuera de la planta, hacia el lado del pie; que la lesión punzante fué la que aparecía infectada; que la otra había sido dada con objeto de buscar el pus: es decir, una herida fué como exploración y la otra casual. Que no vió los zapatos de ese hombre ni le llamaron la atención de que tuviera clavo mohoso alguno; pero que la herida punzante no correspondía con la de un clavo de zapato. Vuelto a preguntar por el abogado de la demandante, el testigo contestó: que la infección fué producida en la herida punzante; que cuando el testigo fué a visitar al paciente éste estaba grave, tenía delirio y no se encontraba en aptitud de ponerse con cuentos ni explicaciones; que no le preguntó cómo se había hecho la herida, sino que le enseñó el pie y encontró un flemón difuso enorme. In-

terrogado por el Hon. Juez, el perito contestó que la herida punzante pudo ser ocasionada con la punta de un pico de los que usan en la carretera, que se zafara de una piedra y saltara a esa región del pie; que no hay manera de confundir una herida punzante con una incisión; que la herida punzante fué la infectada y no la incisión practicada como medida exploratoria para ver si había pus; que el flemón era difuso; se hacía necesario darle cloroformo al paciente y abrir el pie por distintas partes; pero cuando el declarante fué a ver al paciente ya era tarde.

"*Prueba de la demandada:* Declaración jurada del doctor Jiménez: Compareció este testigo, prestó juramento y a preguntas de la parte demandada contestó: que se llama Buenaventura Jiménez Serra; que se dedica al ejercicio de la medicina y cirugía, la que ejerce hace once o quince años en Aguadilla; que es graduado de la universidad de Michigan y está desempeñando el cargo de médico de la Comisión de Indemnizaciones a Obreros, entre Moca y Aguadilla desde que se fundó tal Comisión; que como tal empleado, tiene la obligación de curar a los lesionados. Que recuerda haber asistido al lesionado Justo Velázquez González en abril de 1922; que lo fué a ver por cuenta del municipio de Moca; que llegó a la casa del enfermo y se encontró éste allí y, como se trataba de una infección de una pierna, y como es costumbre del declarante preguntarle a todo el mundo si está asegurado en la Comisión de Indemnizaciones, pues también le preguntó a ese enfermo y éste le contestó que no era accidente del trabajo; que éste tenía una herida en un pie, la que estaba llena de pus, por lo que el declarante le dijo a su practicante que fuera a abrirle el pie; que no recuerda si la herida procedía de la planta del pie.—Repreguntado por el demandante, el testigo contestó: que es médico de la Comisión de Indemnizaciones a Obreros y como tal gana $100.00 mensuales. Que no le preguntó al lesionado qué quería decir él por 'accidente del trabajo', ni le explicó lo que el declarante le quería significar con estas palabras; que el obrero estaba muy grave cuando le dijo esto; que esa fué la última enfermedad de su paciente, pues de ella murió. Que en el informe que el declarante mandó a la Comisión no dijo nada de esas manifestaciones que le hizo el lesionado. Que sólo acostumbra hacer los informes cuando se trata de accidentes del trabajo.— Vuelto a interrogar por el Fiscal, el testigo contestó: que visitó dicho enfermo con su practicante Manuel Rosa, de Moca.—A repreguntas del demandante, el testigo dijo: Que ése no es un practicante autorizado, es un enfermero, que le ayuda en los casos, y que el testigo le dijo a este enfermero que podía abrir el pie infectado.—El

demandante ofreció prueba de *rebuttal* en cuanto a la declaración de este testigo.

"*Declaración de Juan Bautista Soto Latorre:* Compareció este testigo, prestó juramento y, a preguntas del Fiscal, contestó: que se llama según se deja expresado; es investigador de la Comisión de Indemnizaciones a Obreros, cargo que ocupa desde hace próximamente cinco años.—Que allá por el año 1922, como tal empleado, tuvo que intervenir en la muerte del obrero Justo Velázquez; que, por orden de dicha Comisión, practicó una investigación en la casa en que había muerto dicho señor Velázquez; que allí encontró un zapato que le dijeron era de los que usaba el lesionado; que el zapato mostraba una rotura en forma triangular en el pie izquierdo; que al terminar el testigo el examen del zapato, llegó a la conclusión que el zapato había sido cortado en forma triangular como con una cuchilla; que ese zapato era viejo y tenía unos clavitos que sobresalían un poco del talón. Que el testigo tomó varias declaraciones, una de ellas al Dr. Cancio.—En este acto el Fiscal le presentó al testigo un documento y el testigo, a preguntas del Ministerio Público, manifestó que ese documento lo. había firmado el Dr. Rodríguez Cancio ante él y bajo juramento.

"*Exhibit 'A' de la demandada.*—En este momento el Fiscal presentó como prueba y fué admitida por la Corte y marcada exhibit 'A' del demandado, una declaración jurada por el Dr. Rodríguez Cancio en San Sebastián, el día 11 de agosto de 1922, ante J. B. S. Latorre, investigador; y la cual copiada literalmente dice así: 'Modelo No. 5B.—R. 5646 Dec. 28, 1921—5,000.—Caso No. 20,707.—Gobierno de Puerto Rico—15.—Comisión de Indemnizaciones a Obreros —Declaración Jurada—Yo, Miguel Rodríguez Cancio, mayor de edad, vecino de San Sebastián, de profesión médico-cirujano, bajo juramento declaro: Que, hacia mediados de abril del corriente año, fuí requerido por el vecino de Moca, Justo Velázquez González, para hacerle una visita que ofreció pagarme, alegando llamarme como médico particular y no de la Comisión de Indemnizaciones.—Que allí supe que antes había sido visitado por el Dr. Jiménez de Aguadilla y que un practicante de Moca le había practicado una incisión en la región plantar del pie izquierdo.—Que de mi examen deduje que el paciente había recibido una lesión punzante en dicha región, la cual se había hecho asunto de un proceso infeccioso que dió lugar al flemón difuso del pie.—La infección por descomposición del pus, se generalizó, dande lugar a una séptico-priohemia de la cual supe murió cuatro o cinco días después.—Que no tuve noticias allí de que fuera un accidente del trabajo y que imaginé que así debe ser

cuando me llamaron como médico privado.—Que es cuanto tengo que decir con respecto al caso y al efecto lo firmo en San Sebastián a 11 de Agosto de 1922.—(fdo.) M. Rodríguez Cancio.—Jurada y suscrita ante mí: (fdo.) J. B. S. Latorre—Inv.'

"*Declaración jurada de Vicente Calventy:* Compareció este testigo, prestó juramento, y, a preguntas del Fiscal, contestó: que se llama Vicente Calventy; es sobrestante de Obras Públicas desde hace 5 años; que conoció a Justo Velázquez González, trabajando éste como capataz auxiliar, bajo las órdenes del capataz Pedro Valentín, en la carretera que va de Moca a San Sebastián; que vió a dicho Velázquez antes del día 6 de abril de 1922; que, cuando un obrero se lesiona, el deber del capataz es comunicarlo a la oficina del declarante; que éstas eran las instrucciones que tenía Pedro Valentín; que el día 17 de abril de 1922 fué que se le notificó que dicho obrero recibiera la lesión objeto de este caso.—Repreguntado por la parte actora, el testigo contestó: que esas órdenes fueron dadas por el declarante a su capataz Pedro Valentín, orden que éste no cumplió en el caso de autos, pues no le hizo la notificación en seguida.—Vuelto a interrogar por el señor Fiscal, el declarante expuso: que dicho lesionado trabajó como año y medio bajo las órdenes del declarante; y con el Departamento por más de 14 años. —A preguntas del Hon. Juez, el testigo manifestó: que ni el día 6 de abril de 1922 ni el 17 del mismo mes y año visitó a dicho enfermo; que no lo vió ni habló con él nada."

Si el objeto del abogado al presentar el Exhibit "A" de la demandada era atacar la veracidad de la declaración del testigo Cancio Vendrell, tal esfuerzo fué evidentemente un fracaso. La declaración directa e inequívoca del Dr. Cancio Vendrell permanece prácticamente sin contradecir, en notable contraste con la combinación poco convincente de admisiones, circunstancias e inferencias relacionadas remotamente, contenidas en la prueba aducida por la demandada.

El Dr. Jiménez no dice que encontró más de una herida en el pie, ni ningún otro rasguño, puntazo o raspadura que pudiera haberse infectado. Por lo menos dos testigos que vieron el pie inmediatamente después del accidente declaran que sólo había una herida. Velázquez le dijo a un amigo que le visitaba, un día o dos después de abandonar el trabajo,

que la herida se le había puesto grave.   El Dr. Jiménez dice que al tiempo de su visita el paciente estaba en un estado grave.   El Dr. Cancio lo halló delirando.   Miembros de la familia llamados a la silla de los testigos en la prueba de *rebuttal* negaron que Velázquez hiciera la manifestación imputádale por el Dr. Jiménez;  pero si lo dijo o no, no es una cuestión decisiva.

Cuando cortes de última instancia no están de acuerdo acerca de lo que constituye un accidente dentro del significado de disposiciones más o menos parecidas en las varias Leyes de Indemnizaciones a Obreros, la opinión de un capataz auxiliar de una cuadrilla que trabaja en una carretera, difícilmente puede considerarse como concluyente sobre este punto.   Velázquez pudo haber estado bajo la impresión de que una herida que él mismo se había infligido, independiente de las circunstancias, nunca podía considerarse como un accidente ''proveniente de cualquier acto o función inherente a 'su trabajo' o empleo o que ocurriera dentro del curso de éste, por consecuencia del mismo.''   Él no fué repreguntado sobre este punto por el médico y no se podía conseguir para ser repreguntado durante el juicio.   Si su declaración pudiera interpretarse como una admisión de que la infección no se originó en la herida punzante producida por el pico, no ha sido corroborada siquiera por la declaración del Dr. Jiménez, y estaría en contradicción con toda la prueba del caso, a excepción únicamente con el zapato viejo hallado por otro de los testigos presentados por la Comisión.

El zapato sobre el cual parece fundarse el caso por parte del gobierno, por la identificación que de él se pudo hacer, se menciona como uno de los zapatos que Velázquez usaba. No se desprende que fuera un zapato que formaba parte de un par, o que fuera un zapato usado por Velázquez pocos momentos antes de su enfermedad.   El agujero triangular visto por el investigador, si se hubiera hecho con un cortaplumas como insinúa el testigo, no fué producida por un

pico y no habiéndose demostrado especialmente qué parte del zapato fué cortado, es una circunstancia que tiende más bien a la conclusión de que el zapato en cuestión no era el zapato por el cual pasó la punta del pico.  Pero aún si se hubiese demostrado que éste era el zapato usado por Velázquez en los momentos del accidente, habría el hecho de que no hay otra prueba en este caso para sostener la teoría de que se trataba de una infección originada en un rasguño o puntazo producida por los clavos del talón del zapato.  La posibilidad de tal infección es enteramente demasiado remota, para compensar, superar o afectar la preponderancia de evidencia clara en apoyo de la alegación de la demandante de que la muerte fué producida por la infección de la herida recibida por Velázquez mientras trabajaba.

*La sentencia apelada debe ser revocada* y el caso devuelto para ulteriores procedimientos no inconsistentes con esta opinión.